**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 15 |
| | § | |
| ENERGERA, INC. *et al.,*[1] | § | Case No. 26-90433 (ARP) |
| | § | |
| Debtors in a Foreign Proceeding. | § | (Jointly Administered) |
| | § | |

**FOREIGN REPRESENTATIVE'S OBJECTION TO RICKY ST. JULIEN'S MOTION
TO LIFT THE STAY TO ALLOW EMPLOYMENT DISCRIMINATION LAWSUIT
TO PROCEED**

Alvarez & Marsal Canada Inc., solely in its capacity as court-appointed receiver, manager, and authorized foreign representative ("Receiver" or "Foreign Representative") of Energera, Inc. (formerly known as Frac Shack Inc.) ("Energera"); Energera America Inc. (formerly known as Frac Shack America Inc.) ("Energera America"); and Sandtinel LLC ("Sandtinel," and collectively with Energera and Energera America, the "Debtors"), pursuant to the *Consent Receivership Order* dated and pronounced on March 17, 2026 (the "Receivership Order"),[2] entered by the Court of King's Bench of Alberta in Judicial Centre of Edmonton, Alberta, Canada, Court File No. 2603-02889 (the "Canadian Court" and the "Canadian Proceeding"), pending under Canada's *Bankruptcy and Insolvency Act* ("BIA"), respectfully submits this objection (the "Objection") to the *Motion to Lift the Stay to Allow Employment Discrimination Lawsuit to Proceed* [Dkt. No. 39] (the "Stay Motion") filed by Ricky St. Julien ("St. Julien"). In support of this Objection, the

---

[1] Simultaneous chapter 15 petitions were filed by the Receiver for the following affiliated debtors: Energera Inc. f/k/a Frac Shack Inc.; Energera America Inc. f/k/a Frac Shack America Inc.; and Sandtinel LLC.

[2] A certified copy of the Receivership Order is attached to the Verified Petition as **Exhibit 1** and can also be downloaded free of charge at the Receiver's website: https://www.alvarezandmarsal.com/Energera and is incorporated herein for all purposes. Energera International Inc. (formerly known as Frac Shack International Inc.) ("Energera International") is a Canadian entity that is also part of the Canadian Proceeding and subject to the Receivership Order.

Foreign Representative relies on the *Declaration of Orest Konowalchuk in Support of Foreign Representative's Objection to Ricky St. Julien's Motion to Lift the Automatic Stay*, attached hereto as **Exhibit A** (the "Receiver Declaration") and the *Declaration of Foreign Counsel in Support of Foreign Representative's Objection to Ricky St. Julien's Motion to Lift the Automatic Stay*, attached hereto as **Exhibit B** (the "Kashuba Declaration"), and states as follows:

## PRELIMINARY STATEMENT

1. The automatic stay in these Chapter 15 proceedings was imposed for specific and compelling reasons: to protect the Debtors' U.S. assets, facilitate the orderly administration of the Canadian Proceeding, and maximize value for all stakeholders through an organized sale process. St. Julien's Stay Motion, which seeks to lift the stay to pursue an employment discrimination lawsuit against Energera America, should be denied because: (a) the circumstances justifying the stay remain fully applicable; (b) granting relief would undermine the protections the stay was designed to provide; (c) there is no insurance coverage for the claims at issue; (d) lifting the stay would serve no useful purpose because there will likely be no claims process or distribution to unsecured creditors in the Canadian Proceeding; and (e) allowing St. Julien's litigation to proceed would divert the Debtors' limited resources from the Canadian estate's administration and sale process, to the detriment of all creditors.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P). The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Objection to the extent it is later

determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      The predicates for the relief requested herein are sections 105(a), 362, and 1521 of the Bankruptcy Code and rules 4001 and 9014 of the Bankruptcy Rules.

**BACKGROUND**

**A.      The Canadian Proceeding and the Stay**

4.      On March 17, 2026, the Canadian Court entered the Receivership Order, appointing Alvarez & Marsal Canada Inc. as receiver and manager of the Debtors' current and future assets, undertakings, and properties of every nature and kind. The Receivership Order empowers the Receiver to, among other things: (a) take possession of and exercise control over the Debtors' property; (b) manage, operate, and carry on the business of the Debtors, including the power to cease operations or cease to perform any contracts; (c) settle, extend, or compromise any indebtedness owing to or by the Debtors; and (d) initiate, prosecute, defend, and settle proceedings with respect to the Debtors. The Receivership Order also provides a broad stay of proceedings and enforcement actions against the Debtors and their property, prohibiting any person from commencing or continuing any proceeding or enforcement process against the Debtors except with the written consent of the Receiver or leave of the Canadian Court.

5.      On March 30, 2026, the Foreign Representative filed a *Verified Petition for (I) Recognition of Foreign Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* [Dkt. No. 3][3] with this Court.

---

[3] The Verified Petition contains additional information and background regarding the Debtors and the Canadian Proceeding.

Concurrently, the Foreign Representative filed its *Emergency Motion for Provisional Relief Pursuant to Bankruptcy Code Section 1519* [Dkt. No. 6] (the "Provisional Relief Motion").

6.      On April 1, 2026, this Court entered an *Order Granting Foreign Representative's Emergency Motion for Provisional Relief Pursuant to Bankruptcy Code Section 1519* (the "Provisional Relief Order") [Dkt. No. 15].

7.      On May 4, 2026, this Court entered its *Order Granting Petition for (I) Recognition of a Foreign Proceeding, (II) Recognition of the Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* [Dkt. No. 33] (the "Recognition Order").

**B.      The St. Julien Litigation**

8.      On or about March 14, 2025, St. Julien filed a lawsuit against Energera America in the 165th District Court of Harris County, Texas, Cause No. 2025-17552 (the "St. Julien Litigation"). The lawsuit was subsequently removed to the United States District Court for the Southern District of Texas, Houston Division, where it remains pending under Case No. 4:25-cv-01827.

9.      On August 14, 2025, St. Julien filed his First Amended Complaint in Federal District Court, asserting claims for racial discrimination and retaliation under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964.

10.     On April 13, 2026, after the entry of the Provisional Relief Order, notice of the bankruptcy filing and imposition of the automatic stay was provided in the St. Julien Litigation.

11.     In the Stay Motion, St. Julien seeks relief from the stay to: (a) continue the St. Julien Litigation in Federal District Court; (b) proceed to judgment; (c) seek recovery from alleged insurance proceeds; and (d) liquidate his claim against the Debtors to the extent insurance proceeds are insufficient to pay his claim in full.

4

## ARGUMENT

**A.    The Stay Was Imposed to Protect the Debtors' Assets and Facilitate the Canadian Proceeding**

12.    The automatic stay under section 362 of the Bankruptcy Code was made applicable to the Debtors and their property through both the Provisional Relief Order and the Recognition Order. The stay was imposed because it was "urgently needed to protect the Debtors, their assets located in the territorial jurisdiction of the United States, and the interests of all of the Debtors' creditors." *See* Provisional Relief Order at ¶ E. Without the stay, there was a material risk that parties could "take certain actions against the Debtors or their assets in the United States" that would "(a) interfere with the jurisdictional mandate of this Court under chapter 15 of the Bankruptcy Code, (b) interfere with and cause harm to the administration of the Canadian Proceeding and (c) undermine the Debtors' efforts to achieve a value-maximizing sale in the Canadian Proceeding for the benefit of all of the Debtors' stakeholders." *Id.* at ¶ C.

13.    The Recognition Order recognized the Canadian Proceeding as a foreign main proceeding and confirmed that section 362 of the Bankruptcy Code applies with respect to the Debtors and the property of the Debtors that is within the territorial jurisdiction of the United States. Recognition Order at ¶ 4(A). The Recognition Order further stayed the commencement or continuation of any action or proceeding concerning the assets, rights, obligations, or liabilities of the Debtors. *Id.* at ¶ 7(A). These protections were found to be "necessary to effectuate the purposes and objectives of chapter 15 and to protect the Debtors and their interests." *Id.* at ¶ I.

**B.    St. Julien Has Not Demonstrated Cause to Lift the Stay**

14.    Section 362(d)(1) of the Bankruptcy Code provides that the court shall grant relief from the stay "for cause." The term "cause" is not defined in the Bankruptcy Code but rather must be determined on a case-by-case basis based on an examination of the totality of the circumstances.

5

*See In re Xenon Anesthesia of Tex., PLLC*, 510 B.R. 106, 112 (Bankr. S.D. Tex. 2014). In determining cause, courts consider, *inter alia*, the following factors: (1) whether the relief will result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the debtor's insurer has assumed full responsibility; (4) whether litigation in the other forum would prejudice the interests of other creditors; (5) the interests of judicial economy; (6) whether the proceedings have progressed to the point that parties are ready for trial; and (7) the impact of the stay on the parties and the balance of harm. *Id.*

**C.      There Is No Insurance Coverage for St. Julien's Claims**

15.      St. Julien asserts that he seeks to "recover from the Debtors/Defendants' available liability insurance proceeds." Stay Motion at ¶ 9. St. Julien has been informed on multiple occasions, however, that there is no insurance coverage applicable to his claims. Energera America first disclosed the absence of applicable insurance in its Rule 26(a) Initial Disclosures, served on August 13, 2025, which stated that the Defendant "is not aware of any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse payments made to satisfy a judgment." *See* **Exhibit C**, Defendant Energera America, Inc.'s Rule 26(a) Disclosures at 3. Energera America reiterated this disclosure in its Responses to Plaintiff's First Requests for Production, served on September 24, 2025, confirming that "[a]s stated in Defendant's Rule 26a disclosures, Defendant is not aware of any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse payments made to satisfy a judgment" and that Defendant "does not have any materials responsive" to Plaintiff's request for insurance documents. *See* **Exhibit D**, Defendant Energera America, Inc.'s Objections and Responses to

Plaintiff's First Requests for Production at 10. The Receiver confirms that, to his knowledge, there is no applicable insurance policy related to the claims asserted by St. Julien against Energera America. *See* Receiver Declaration, **Exhibit A**, ¶ 8. Because there is no insurance coverage, granting St. Julien relief from the stay would not result in any recovery from insurance proceeds—it would instead require the expenditure of estate resources to defend litigation that provides no benefit to unsecured creditors.

16.     Courts routinely lift the automatic stay in personal injury cases when the debtor's insurer has assumed full responsibility for the defense because the litigation can then proceed without depleting estate assets. *See, e.g.*, *Matter of Edgeworth*, 993 F.2d 51, 53 (5th Cir. 1993) (holding liability insurance proceeds payable to third parties are generally not property of the estate and permitting tort claimants to proceed to establish liability with recovery limited to insurance); *Sosebee v. Steadfast Ins. Co.*, 701 F.3d 1012, 1024 (5th Cir. 2012) (recognizing the routine practice of lifting the stay to liquidate personal injury claims where recovery will be confined to insurance); *In re Coho Resources, Inc.*, 345 F.3d 338, 343 (5th Cir. 2003) (acknowledging pathway for allowing litigation to proceed with collection limited to liability insurance). Here, by contrast, there is no insurance coverage.

17.     Where, as here, there is no insurance coverage, lifting the stay would directly and adversely impact estate resources to the prejudice of all creditors. *See, e.g.*, *In re Residential Capital, LLC*, No. 12–12020 (MG), 2012 WL 3249641 (Bankr. S.D.N.Y. 2012) (denying stay relief sought to pursue prepetition wrongful reconveyance claims where no insurer assumed responsibility for the action and any judgment would deplete estate resources and prejudice other creditors). St. Julien cannot credibly claim that lifting the stay will enable recovery from insurance

proceeds when he has been expressly informed—twice—that no such insurance exists. *See* **Exhibits C, D**; Receiver Declaration, **Exhibit A**, ¶ 8.

**D.      Lifting the Stay Would Serve No Useful Purpose**

18.     The Receiver's Canadian counsel has advised that liquidation of a claim to judgment is not required for presentation in the Canadian receivership proceeding. Kashuba Declaration, **Exhibit B**, ¶ 6 ("[T]here is no requirement under the BIA that a creditor liquidate an unsecured claim to judgment before presenting or filing that claim in a Canadian insolvency proceeding."). Additionally, it is substantially unlikely that there will be either a claims process or any distribution to unsecured creditors in the Canadian receivership proceeding. *Id.* ¶ 7; Receiver Declaration, **Exhibit A**, ¶ 10. As of the filing of the Verified Petition, the outstanding indebtedness owing to the secured Syndicate under the Credit Agreement was CAD $39,061,058.27, plus accrued and accruing interest, costs, expenses, and other obligations. *See* Verified Petition at ¶ 20; Receiver Declaration, **Exhibit A**, ¶ 9. The Debtors have approximately seventy-eight (78) unsecured creditors with unpaid trade balances totaling approximately $498,334—a fraction of the secured debt. *See* Verified Petition at ¶ 21; Receiver Declaration, **Exhibit A**, ¶ 9. Given this substantial shortfall, any judgment St. Julien might obtain would almost certainly be worthless, and the cost of defending the litigation would only serve to deplete estate assets. *See* Receiver Declaration, **Exhibit A**, ¶¶ 10-11; Kashuba Declaration, **Exhibit B**, ¶ 7.

**E.      Lifting the Stay Would Interfere with the Canadian Proceeding**

19.     Granting relief from the stay to permit St. Julien's litigation to proceed would directly interfere with the administration of the Canadian Proceeding and undermine the protections the stay was designed to provide. The Foreign Representative demonstrated in the Verified Petition and Emergency Motion for Provisional Relief that the Debtors have limited

resources and an immediate stay was necessary to prevent diversion of those resources to defend the Debtors and their assets in courts throughout the United States. *See* Verified Petition at ¶ 32; Emergency Motion for Provisional Relief at ¶ 23. The Foreign Representative emphasized that "[a]bsent provisional relief, the Debtors face the real risk that parties within the territorial jurisdiction of the United States may decide to exercise control over the Debtors' assets or pursue, and then enforce, a judgment against the Debtors and/or their assets. Such actions would circumvent, and interfere with, the administration of the Canadian Proceeding and the value-maximizing sale process that the Debtors intend to pursue therein." Emergency Motion for Provisional Relief at ¶ 20; *see also* Receiver Declaration, **Exhibit A**, ¶¶ 11-12.

20.     These concerns remain fully applicable. The Receiver is actively operating the Energera Group (as defined in the Verified Petition) and conducting a sale process for the Debtors' assets. Receiver Declaration, **Exhibit A**, ¶ 10. Diverting resources to defend the St. Julien Litigation—which the Receiver would be required to do absent insurance coverage—would detract from the Receiver's ability to focus on the value-maximizing sale process and facilitate the fair and efficient administration of the Canadian Proceeding. *Id.* ¶¶ 11-12.

**F.     The Balance of Harms Weighs Against Lifting the Stay**

21.     In considering whether to grant relief from the automatic stay, courts weigh the injury to the debtor and other creditors if the stay is modified against the injury to the movant if the stay is not modified. *In re Mosher*, 578 B.R. 765, 774-75 (Bankr. S.D. Tex. 2017). Here, the balance tips decidedly against St. Julien.

22.     Lifting the stay would harm the Debtors and all creditors by: (a) diverting limited estate resources from the Canadian Proceeding to defend litigation; (b) distracting the Receiver and Debtors' management from the receivership tasks and sale processes; (c) potentially

interfering with the going-concern sale process that the Receiver is conducting; and (d) permitting one creditor to pursue its individual remedy to the detriment of all other creditors. *See* Receiver Declaration, **Exhibit A**, ¶¶ 11-12. As the Provisional Relief Motion explained, "the harm to any particular creditor by a stay is greatly outweighed by the harm caused to all of the Debtors' other stakeholders, if the Debtors' ability to pursue a value-maximizing sale in the Canadian Proceeding were compromised." Provisional Relief Motion at ¶ 34.

23.     Discovery is not complete in the St. Julien Litigation. *See* Emergency Motion for Provisional Relief at ¶ 23; Receiver Declaration, **Exhibit A**, ¶ 8 (confirming that depositions have not been taken of either the corporate representative for Energera America Inc. or St. Julien). A deposition of St. Julien was scheduled for April 1, 2026, and a deposition of Energera America's corporate representative was scheduled for April 2, 2026. Significant preparation and coordination with counsel will be required for a corporate representative to be ready for the deposition given the departure of the Debtors' former CEO. Considerable expense would be incurred to complete discovery and try the St. Julien Litigation to final judgment. Receiver Declaration, **Exhibit A**, ¶ 8.

24.     In contrast, St. Julien's harm from the stay continuing is minimal. His claims are not extinguished; they are merely suspended. St. Julien can assert any claim he may have in the Canadian Proceeding without first obtaining a judgment. Kashuba Declaration, **Exhibit B**, ¶ 6. Furthermore, even if St. Julien were permitted to proceed to judgment, given the Debtors' financial circumstances and the absence of insurance coverage, any recovery is highly unlikely. Receiver Declaration, **Exhibit A**, ¶¶ 9-10; Kashuba Declaration, **Exhibit B**, ¶ 7. Thus, St. Julien's ability to ultimately recover on any judgment is no different whether the stay remains in place or is lifted.

**G.      Public Policy Favors Maintaining the Stay**

25.      The public interest is served by maintaining the stay. As the court noted in *Cornfeld v. Investors Overseas Servs., Ltd.*, "the firm policy of American courts is the staying of actions against a corporation which is the subject of a bankruptcy proceeding in [a foreign court]." 471 F. Supp. 1255, 1259 (S.D.N.Y. 1979), *aff'd*, 614 F.2d 1286 (2d Cir. 1979). The goals of Chapter 15—promoting cooperation between U.S. and foreign courts, ensuring fair and efficient administration of cross-border insolvencies, and protecting and maximizing debtor assets—are all advanced by maintaining the stay and permitting the Canadian Proceeding to proceed in an orderly fashion. *See* 11 U.S.C. § 1501(a).

**H.      The Recognition Order Supports Maintaining the Stay**

26.      The Recognition Order provides that this Court "retains exclusive jurisdiction with respect to the enforcement, amendment or modification of this Order, any request for additional relief or any adversary proceeding brought in and through this chapter 15 proceeding, and any request by an entity for relief from the provisions of this Order, for cause shown, that is properly commenced and within the jurisdiction of this Court." Recognition Order at ¶ 9. The Recognition Order further applies to "all parties in interest in this chapter 15 case and all of their agents, employees and representatives, and all those who act in concert with them who receive notice of this Order." *Id.* at ¶ 16. St. Julien has not demonstrated that cause exists to modify the protections afforded by the Recognition Order.

**WHEREFORE**, the Foreign Representative respectfully requests that the Court: (i) deny the Stay Motion; and (ii) grant such other and further relief as is just and proper.

Dated: June 5, 2026.

Respectfully submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**

By: */s/ Alexander R. Perez*
John D. Cornwell
Texas Bar No. 24050450
Alexander R. Perez
Texas Bar No. 24074879
700 Milam Street, Suite 800
Houston, Texas 77002
Telephone: (713) 222-1470
Facsimile: (713) 222-1475
jcornwell@munsch.com
arperez@munsch.com

*Counsel for Alvarez & Marsal*
*Canada Inc., Solely in its Capacity as*
*Court-Appointed Receiver and*
*Manager of the Debtors*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 5, 2026, a true and correct copy of the foregoing document was served electronically through the Court's ECF system on parties registered to receive electronic notice in the above-captioned bankruptcy case and as indicated below by U.S. first class mail, postage prepaid.

*Counsel for Ricky St. Julien*
Reese W. Baker
Baker & Associates
950 Echo Lane, Suite 300
Houston, Texas 77024

 */s/ Alexander R. Perez*
Alexander R. Perez